## ISAAC BELL, Inc., v. SECURITY INS. CO. OF NEW HAVEN, CONN.
### No. 916.

Court of Appeal of Louisiana. First Circuit.

Feb. 8, 1932.

Hawthorn, Stafford & Pitts, of Alexandria, for appellant.

Modisette & Adams, of Jennings, for appellee.

ELLIOTT, J.

Isaac Bell, Inc., bought from People's Lumber Company, Inc., during the month of February, 1930, building material in amount $812.94, which the purchaser used in the construction of a store building.

An account duly sworn to by People's Lumber Company, Inc., was made out and recorded in the mortgage records of the parish of Allen, the registry operating as a privilege on the building so constructed and acre of ground on which it was situated.

After this registry had been made, Isaac Bell, Inc., secured insurance on the building in the Security Insurance Company of New Haven Connecticut for $1,000.

On or about July 12, 1930, the building was destroyed by fire, upon which Isaac Bell, Inc., brought suit against the insurance company to compel it to pay the policy and the penalty provided for by Act No. 168 of 1908.

Security Insurance Company resisted payment, alleging that the policy was null and void and of no effect before and at the time of the fire because of a stipulation in the policy which reads: "Or if with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed."

Further answering, it avers that People's Lumber Company, Inc., brought suit against Isaac Bell, Inc., obtained judgment against it on said account, with recognition of its privilege on the building, caused a writ of fieri facias to issue on the judgment, under which the sheriff seized the building, served notice of seizure on Isaac Bell, Inc., and advertised the property for sale. The building was then destroyed by fire. That said service of notice and advertisement was known to Isaac Bell, Inc., and was the commencement of foreclosure proceedings within the meaning of the policy, with the result that the policy was thereby forfeited and rendered null and void.

There was judgment in favor of the plaintiff as prayed for, except for the penalty, which was refused. The defendant has appealed.

The plaintiff filed an answer to the appeal in which it prays that the penalty refused in the lower court be allowed and that the judgment be otherwise affirmed.

The policy is in the New York standard form of fire insurance policy, as prescribed by Act No. 105 of 1898, § 22 (amended by Act No. 255 of 1914). The policy purports to have been issued at the domicile of the company at New Haven, Conn., but it is provided that it shall not be valid until countersigned by its authorized manager or agent at Kinder, La. It was evidently not drawn up for the purpose of this particular insurance.

The judge a quo held that the term "foreclosure proceedings" used in the policy is a common-law term, with a common-law meaning, and that the execution, seizure, and service made and advertisement, although known to Isaac Bell, Inc., was not "foreclosure proceedings" within the meaning of the policy.

The language used is undoubtedly a common-law term, and is intended to have the meaning which it had at the company's domicile in the state of Connecticut.

The language used and the policy is the same that the Supreme Court acted on in the case Stenzel v. Pennsylvania Fire Insurance Co., 110 La. 1019, 35 So. 271, 98 Am. St. Rep. 481. In that case the defense was as is in the present; that nothing was due, because at the time of the fire the policy had become void as the result of the accomplishment of certain conditions expressed in it, which the court quoted from the policy as follows:

"This entire policy shall be void * * * if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed."

 The Supreme Court, in the case mentioned, quoted further policy stipulations, but only that part mentioned is pertinent to the present case. The Supreme Court, in the course of the opinion referring to the term "foreclosure proceedings," says:

"This clause must be read in the light of the fact that in some states, and notably in Pennsylvania, the home of the defendant company, there is such a thing as enforcing a mortgage extrajudicially, by simply giving notice of sale, and that the policy in which this clause is found is what is known as a 'Standard Policy;' that is to say, not a document drawn up specially to evidence this particular contract of insurance, but a printed form used for all the insurance written by the defendant—in fact, imposed upon the defendant by a statute of the state of its

domicile. [Citing authorities.] Bearing, then, in mind that in a number of states, and notably in the home state of defendant, mortgages may be enforced in two days—by foreclosure proceedings, and by an extrajudicial giving of notice of sale—we readily see what is meant by the stipulation, 'if foreclosure proceedings be commenced or notice given of the sale of any property covered by this policy by virtue of any mortgage or trust deed.' The scope and meaning of the stipulation is then, in reality, this: That the policy shall be void if the insured confers upon the mortgagee the right to enforce the mortgage extrajudicially, by merely giving notice of sale, and such mortgagee proceeds to enforce the mortgage in that manner. Evidently the condition is one which can, in the nature of things, have no operation in this state, where such a mode of enforcing mortgages is unknown; and, as a consequence, in this state the clause stands in the policy as mere harmless surplusage.

"The remaining question, in connection with this first defense, is whether at the time of the fire foreclosure proceedings had been commenced, within the meaning of the clause, 'the policy shall be void if foreclosure proceedings are commenced.' Strictly speaking, there is in this state no such thing as a foreclosure proceeding. Here, however, as elsewhere, mortgages have to be enforced, and this clause evidently has application to whatever proceedings may be appropriate for the enforcement of mortgages.

"But this in Louisiana means judicial proceedings, since here mortgages are not enforced extrajudicially," etc.

There is no real difference between the defense in the present case and the defense in the case cited; consequently it is a governing authority unless overruled by Jones & Pickett, Ltd., v. Michigan Fire & Marine Ins. Co., 132 La. 848, 61 So. 846.

After close consideration, we conclude that the case last mentioned, although on first sight apparently contrary thereto, is in fact based on a different defense, and is therefore not in conflict with the Stenzel Case.

The district judge says "foreclosure proceedings" strictly speaking, are chancery proceedings by which the mortgagor's right to redemption of the property is barred or closed forever and are unknown in our jurisprudence, citing Stenzel v. Pennsylvania Fire Ins. Co., 110 La. 1019, 35 So. 271, 98 Am. St. Rep. 481.

He further says: "In this state judicial mortgages are not foreclosed. Execution issues under and by virtue of the judgment and not under the judicial mortgage which comes into being when the judgment is recorded."

The statement of the lower court seems to be incontestibly correct. In Bouvier's Law Dictionary, the word foreclosure is defined to

526

be: "A proceeding in chancery by which the mortgagor's right of redemption of the mortgaged premises is barred or foreclosed forever. This takes place when the mortgagor has forfeited his estate by nonpayment of the money due on the mortgage at the time appointed, but still retains the equity of redemption. In such case, the mortgagee may file a bill calling on the mortgagor in a court of equity to redeem the estate presently, or in default thereof to be forever closed or barred from any rights of redemption."

Blackstone, speaking of a foreclosure, says, referring to process in equity:

"But on the other hand a mortgagee may either compel the sale of the estate in order to get the whole of his money immediately or else call upon the mortgagor to redeem his estate presently or in default thereof to be forever foreclosed from redeeming the same; that is to loose his equity of redemption without possibility of recall." Blackstone's Commentaries, Book 2, Subject, Things, chapter 10, p. ——.

In Kent's Commentaries, that author says, on the subject of foreclosure:

"Of strict foreclosure—The equity of redemption which exists in the mortgagor after default in payment, may be barred or foreclosed if the mortgagor continues in default after due notice to redeem. The ancient practice was by bill in chancery to procure a decree for a strict foreclosure of the right to redeem, by which is meant, the lands became the absolute property of the mortgagee. This is the English practice to this day; though sometimes the mortgagee will pray for and obtain a decree for a sale of the mortgaged premises under the direction of an officer of the court, and the proceeds of the sale will in that case be applied toward the discharge of the encumbrances according to priority. The latter practice is evidently the most beneficial to the mortgagor, as well as the most reasonable and accurate disposition of the pledge. It prevails in New York." etc. Kent's Commentaries, Vol. 4, Subject, Real Property (4th Ed.) p. 180, § 181. Several states are referred to by the author; we mention New York, because the policy in question is in form the standard New York policy.

From Ruling Case Law, Vol. 19, Subject, Mortgages, p. 517, § 316, we excerpt as follows:

"The phrase, foreclosure of a mortgage and equity of redemption, were imported here from England along with the body of the Common Law and are yet in constant use, but it must be always remembered, in order to avoid being mislead, that they have acquired a totally different meaning here from that they originally bore."

The ordinary mode of procedure in the foreclosure of a common-law mortgage at the present time is set out at length in Williams on Real Property, chapter 2, Subject, Of a Mortgage of Land, pp. 613 et seq.

According to this last-mentioned author, the foreclosure of a common-law mortgage or trust deed is not accomplished by an execution or seizure, but is a procedure whereby a mortgagor is called on and given a reasonable time in which to pay the debt, and, if he does not, the mortgagee becomes the absolute owner of the property, and the right and title of the mortgagor thereto is cut off and barred forever.

Defendant argues that the execution of a judgment, service of a notice of seizure, and advertisement, is, in effect, a commencement of foreclosure proceedings within the sense and meaning of the present policy, and constitutes a forfeiture of the same. But the common-law authorities do not bear out the contention.

In Ruling Case Law, Vol. 14, Subject, Insurance, § 306, p. 1128, the author has this to say on that subject:

"A clause for a forfeiture of the policy in foreclosure proceedings under a mortgage or deed of trust, will not effect a forfeiture on foreclosure of a mechanic's lien or a judgment lien or a vendor's lien."

Corpus Juris, Vol. 26, p. 239, § 299, contains similar language.

Burton-Lingo Co. v. S. E. Patton, 15 N. M. 304, 107 P. 679, 27 L. R. A. (N. S.) 420, seems to have been based on a policy like the standard New York form sued on. In that case, judgment had been rendered against the debtor ordering the enforcement of a lien and privilege against the property insured, and execution had issued on the judgment as in the present case.

The court held that the execution of a judgment, enforcing a lien and privilege, was not a foreclosure proceeding such as the policy provided for, and did not forfeit the policy.

From Vance on Insurance, Hornbook Series, chapter XIII, subject, the Standard Fire Policy.—Foreclosure Proceedings, § 167, p. 467, we excerpt as follows:

"It is held by the courts that such proceedings are deemed to commence, with the first legal step taken to bring about foreclosure, such as the service of the petition to foreclose upon the insured." This language indicates that the foreclosure of a common-law mortgage is accomplished by a suit to foreclose as stated in Blackstone, Kent, and Williams, and not by the execution of a judgment.

The defendant's brief concedes that such is the rule in insurance cases. We copy from defendant's brief: "Therefore in cases which have arisen in the Common Law states in insurance cases, the decisions have been to the effect that a proceeding to enforce a judg-

ment is not a foreclosure proceeding, and does not invalidate the policy; all of which is technically good law in the common law states, but is entirely inapplicable under the plain provision of our statute, where a judgment is as much a mortgage as is a conventional mortgage.

"The term mortgage, as used in the policy, certainly cannot be restricted to any one kind of mortgage; it includes all kinds of mortgages," etc.

We differ with the defendant about the matter. Our conclusion is that the execution, seizure, and advertisement relied on by the defendant was not the commencement of foreclosure proceedings such as the policy has in mind.

In Jones & Pickett, Ltd., v. Michigan Fire & Marine Ins. Co., 132 La. 847, 61 So. 846, the suit was on the same kind and form of policy sued on in the present case. The policy in that case contained a stipulation, not urged by the defendant in the present case to the effect, "If the hazard be increased by any means within the control or knowledge of the insured"; but then follows the same stipulation urged by the defendant.

The court says, in the course of the opinion, "The evidence is that the property insured was seized under foreclosure proceedings." It is said in another place:

"The only question of law at issue is whether or not the defendant is liable under its policy in case of loss after foreclosure proceedings were commenced with the knowledge of the insured."

In the Jones & Pickett Case, the policy was held to have been forfeited, but our conclusion is that the decision is founded on the defense that the "hazard be increased by any means within the control or knowledge of the insured," rather than upon the defense urged in the present case. A Louisiana mortgage can be foreclosed by seizure and sale in executory process.

In the case of Perrin v. Stuyvesant Insurance Co., 140 La. 812, 74 So. 110, 111, the court, referring to the ground on which the opinion in the Jones & Pickett Case was based, said:

" * * * The ground was that foreclosure proceedings had been instituted against the property since the issuance of the policy; and this was held fatal, although the foreclosure proceedings had been discontinued before the fire," etc.

Defendant's brief states that the law, making the New York standard form of fire insurance policy the legal form in this state was adopted after the decision in Stenzel v. Pennsylvania Fire Ins. Co., 110 La. 1019, 35 So. 271, 98 Am. St. Rep. 481; but that is a

mistake. Act No. 105 of 1898 was previous thereto.

The defendant takes the position that the standard New York policy having been adopted by our law as the form of policy to be used in this state, and that as our Civil Code makes no difference between the different kinds of mortgages, whether conventional or legal or judicial, that therefore it is not correct to hold that the mortgage stated in the policy sued on does not stand for a mortgage such as we understand by the term in this state.

The policy sued on in the present case contains the condition which the court held had been broken in the Jones & Pickett Case, to wit: " * * * if the hazard be increased by any means within the control or knowledge of the insured * * * or if, with the knowledge of the insured, foreclosure proceedings be commenced," etc.

We agree with the defendant that the plaintiff had knowledge of the seizure, notice of the same, and of the advertisement of the property for sale, and that such knowledge served to increase the hazard; but the seizure was a forcible taking, not under plaintiff's control.

But these proceedings are not available as a defense in this case because not done in the foreclosure of "any mortgage or trust deed" such as the policy contemplates; consequently the same does not nullify the policy.

Upon the issues tried, we have come to the conclusion that the judgment enforcing the policy is correct and should be affirmed.

■■ The plaintiff prays that the penalty of 12 per cent. provided for by Act No. 168 of 1908 be imposed.

The plaintiff cites us to the Whiteside v. Lafayette Fire Ins. Co., 143 La. 675, 79 So. 217. We think that the reasoning in Monteleone v. Seaboard Fire & Marine Ins. Co., 126 La. 807, 52 So. 1032, and Massachusetts Protective Ass'n v. Ferguson, 168 La. 271, 121 So. 863, 866, should prevail. In the case last mentioned, the court said:

"Penalties in civil actions are not favored by the courts, and should not be imposed except in cases that are clear and free from doubt."

It cannot be said that plaintiff's contention in this case is wholly unfounded. And it is our conviction that the law only intends the imposition of a penalty where the case is clear and free from doubt. The defendant is not to be blamed for resisting the demand of the plaintiff in the present suit.

Judgment affirmed. Defendant and appellant to pay the cost in both courts.