## SMITH et al. v. WORLD FIRE & MARINE INS. CO.

### No. 1139.

Court of Appeal of Louisiana. First Circuit.

April 17, 1933.

St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, for appellant.

Bascom D. Talley, of Bogalusa, for appellees.

ELLIOTT, Judge.

Mallie Smith and Washington Bank & Trust Company brought suit against the World Fire & Marine Insurance Company of Hartford, Conn., to recover the sum of $203.79 and 25 per cent. in addition thereon as a penalty, and $50 attorney's fees.

Their petition alleges: That the defendant insurance company issued its insurance policy in favor of Iley Blackwell on an automobile which the said Blackwell had bought from Knight Motor Company.

That Blackwell purchased the automobile partly on credit, giving notes representing the credit price to the extent of $225.

That said sale was evidenced by an authentic act in which a special mortgage and vendor's privilege was granted by the buyer and retained on the automobile by the seller in order to secure the payment of said notes. The plaintiffs also averred that in order to further secure the payment of the notes, said Blackwell procured insurance on the automobile against loss by theft or fire and, as the notes were by Knight Motor Company, negotiated to the Washington Bank & Trust Company, the insurance was made payable to the assured and to Washington Bank & Trust Company as their interest might appear.

That the plaintiff Smith bought the automobile from Blackwell and as payment indorsed these notes, thereby making himself liable thereon before recourse could be had on Blackwell. That the insurance company took cognizance of the transfer from Blackwell to Smith and, by a rider attached to the insurance policy, subrogated Smith to all the rights of Blackwell under the policy.

It is alleged that the automobile was destroyed by fire.

The defense is that the plaintiff Smith was not the unconditional and sole lawful owner of the automobile at the time it was destroyed, which under a stipulation in the policy was necessary to render the insurance company liable for the loss.

There was judgment in favor of the plaintiffs as prayed for.

Defendants have appealed.

Smith acquired the automobile from Blackwell at Bogalusa.

After he had kept the automobile a short time, he decided that he was unable to meet the maturities of the notes held by the bank and requested Knight Motor Company to take back the automobile and release him from his liability as indorser but Knight Motor Company refused to do so. Smith then found employment in Baton Rouge and took the automobile there with him.

Percy Lindsley, a partner in the firm Knight Motor Company, learning that Smith was not meeting the notes at their maturities, had some conversation about the matter with Blackwell calling his attention to Blackwell's liability to Knight Motor Company as indorser of the notes and it seems that Mr. Knight also had something to say to Blackwell on that subject.

It appears that Smith wrote Blackwell from Baton Rouge requesting him to come and get the automobile and sell it and apply the proceeds to the payment of the notes. It also appears that Lindsley phoned Smith at Baton Rouge from Bogalusa asking him if Blackwell could come get the automobile for the purpose of selling it and applying the proceeds to the payment of the notes, and that Smith agreed that Blackwell could come and get it and sell it for the purpose stated.

Defendant contends that Smith retransferred the automobile to Blackwell and

thereby ceased to be the unconditional and sole owner and that the stipulation in the policy, should the title of the assured cease to be other than that of unconditional and sole owner, it should become null and void, became effective.

Both Smith and Blackwell testify that Smith did not retransfer to Blackwell; that Smith merely authorized Blackwell to take it and sell it for the purpose of paying the notes, Blackwell acting as Smith's agent in the matter.

Defendant urges, in support of a retransfer, written statements which its adjuster obtained from Smith and Blackwell soon after the destruction of the automobile. These statements are both in the handwriting of defendant's adjuster. Smith and Blackwell each admit signing the statements but say that they did not read same and that any language therein contained from which it could be inferred that Smith had transferred the automobile back to Blackwell was not in harmony with their declarations to the adjuster.

The adjuster was not called as a witness to refute or deny their testimony on the subject. In fact, the statements of Smith and Blackwell, as reported by the adjuster, while some inference could be drawn therefrom that Smith had retransferred to Blackwell, yet it is not a necessary conclusion and in view of the testimony of Smith and Blackwell given in open court, we draw no inference therefrom unfavorable to their testimony given on the trial.

The testimony of Smith and Blackwell is supported by that of Lindsley who says that he arranged with Smith for Blackwell to come and get the automobile and sell it for the purpose stated. Blackwell says that he went to Baton Rouge, got the automobile, brought it back to Bogalusa, and placed it in the hands of his brother-in-law, J. D. Young, who intended to buy it. J. D. Young was using the automobile at the time it was destroyed by fire.

The strongest circumstance brought out by the defense and which is not satisfactorily explained is the fact that Blackwell did not promptly notify Smith that the automobile had been destroyed. He did not tell Smith about it until Smith returned to Bogalusa, which was two or three weeks after the fire. We quote a part of Blackwell's testimony on this subject:

"Q. Well, after the fire did you notify Mr. Smith about it? A. No sir.

"Q. Why not? A. Well, did not think anything about notifying him about the car.

"Q. Isn't it a fact you did not notify him because he no longer had interest in the car? A. No sir.

"Q. You did not consider that he had sufficient interest in the car to notify him, did you? A. No sir.

"Q. And that was a good while after the fire when he same over here, wasn't it? A. About two or three weeks."

This neglect, however, is not sufficient to overcome the positive denials of Smith and Blackwell, corroborated by Lindsley, that no retransfer took place. The entire matter depends upon the credibility of witnesses and there is no evidence that would justify us in concluding that the lower court has reached an erroneous conclusion on the subject.

■ Defendant contends that it should not be condemned to pay the penalty and attorney's fees it was condemned to pay by the judgment of the lower court. This penalty and the attorney's fees are claimed under the provisions of section 3, Oct No. 59 of 1921 (Ex. Sess.)

Defendant contends that it has a serious defense and that where it has a reasonable and debatable ground of defense, even though it has failed, it should not be condemned to pay these damages and attorney's fees, citing the decision of this court in Isaac Bell, Inc., v. Security Ins. Company of New Haven, Connecticut, 139 So. 524, and other cases on the same subject.

This court did hold in the case mentioned that under the provisions of section 3 of Act No. 168 of 1908, the penalty and attorney's fees therein provided for could in a proper case be refused, but the Supreme Court held that the penalty and attorney's fees were mandatory, and the opinion and decree of this court on the subject was set aside and the penalty and attorney's fees imposed. See Isaac Bell, Inc., v. Security Ins. Co. of New Haven, 175 La. 599, 143 So. 705.

The language of section 3 of Act No. 59 of 1921 (Ex. Sess.) is as mandatory as that contained in the statute mentioned.

The lower court properly held in the present case that the defendant must pay the penalty and the attorney's fees which the act provides for.

Judgment affirmed. Defendant and appellant to pay the cost in both courts.